## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

STATE OF INDIANA EX REL. ROKITA,

    *Plaintiff,*

    v.

APRIA HEALTHCARE LLC,

    *Defendant.*

**CASE NO.  1:24-cv-00377-JPH-KMB**

## STATE OF INDIANA'S BRIEF IN SUPPORT OF
## PROPOSED CONSENT JUDGMENT

Plaintiff, Indiana Attorney General *ex rel.* Todd Rokita, as *parens patriae* for the residents of the State of Indiana (the "State"), by counsel, Deputy Attorney General Jennifer M. Van Dame, hereby submits (1) the attached Declaration of Deputy Attorney General Jennifer M. Van Dame, and (2) the State's Brief in Support of Proposed Consent Judgment, as follows:

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1.    Defendant, Apria Healthcare LLC ("Apria"), is a Delaware limited liability company with a principal office located at 7353 Company Drive, Indianapolis, Indiana 46237. [Dkt. 48 ¶¶ 5-6; Consent Judgment ¶ 2.]

2.    Apria provides home healthcare equipment and related services to Indiana residents.  [Dkt. 48 ¶ 7; Consent Judgment ¶ 9.]

1

3.    At all relevant times, Apria was a covered entity subject to the requirements of the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936, as amended by the Health Information Technology for Economic and Clinical Health Act Pub. L. No. 111-5, 123 Stat. 226 (collectively, "HIPAA").  [Dkt. 48 ¶ 127; Consent Judgment ¶ 8.]

4.    Beginning on or around April 5, 2019, Apria experienced a data breach that exposed the personal information and/or protected health information of at least 1,868,831 consumers, including at least 42,021 Indiana residents (the "Apria Data Breach").  [Dkt. 48 ¶¶ 22, 61-62, 64; Consent Judgment ¶ 3.]

5.    On or around September 1, 2021, the Federal Bureau of Investigation ("FBI") alerted Apria to the Apria Data Breach. [Dkt. 48 ¶ 88; Consent Judgment ¶ 4.]

6.    On May 22, 2023, Apria submitted a breach notification form to the Data Privacy Unit of the Indiana Attorney General's Office ("Data Privacy Unit"). [Van Dame Dec. ¶ 5.]

7.    Although HIPAA requires notification within sixty (60) days after the discovery of a breach, 45 C.F.R. § 164.404(b), Apria began notifying consumers of the Apria Data Breach on or around June 6, 2023, approximately 643 days after the discovery of the breach. [Van Dame Dec. ¶¶ 5-6; Consent Judgment ¶ 5.]

8.    The Data Privacy Unit investigated the Apria Data Breach pursuant to HIPAA, as well as the Indiana Disclosure of Security Breach Act, Ind. Code § 24-4.9

*et seq.* ("DSBA") and Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5 *et seq.* ("DCSA").  [Consent Judgment ¶ 6; Van Dame Dec. ¶ 7.]

9.    In addition to the timing of Apria's breach notification, the Data Privacy Unit investigated the root cause of the Apria Data Breach, Apria's security posture leading up to the Apria Data Breach through the date of discovery, and Apria's remediation efforts.  [Van Dame Dec. ¶ 7.]

10.    Throughout 2023, the Data Privacy Unit issued civil investigative demands pursuant to Ind. Code § 4-6-3-3 to Apria and various third parties. [Van Dame Dec. ¶ 8.]

11.    Based on the responses the State received to the civil investigative demands, on February 29, 2024, the Data Privacy Unit filed *State of Indiana ex rel. Rokita v. Apria Healthcare LLC*, Case No. 1:24-cv-00377.  Prior to filing, the Data Privacy Unit provided notice of the action to the U.S. Department of Health and Human Services. [Van Dame Dec. ¶ 9.]

12.    On May 31, 2024, the Data Privacy Unit served written discovery requests on Apria in the litigation, including fifty (50) requests for production. [Van Dame Dec. ¶ 10.]

13.    The Data Privacy Unit has received over 92,000 documents from Apria and third parties through civil investigative demands and written discovery.  [Van Dame Dec. ¶ 11.]

14.    The Data Privacy Unit also requested depositions of three (3) current or former Apria employees but was unable to complete the depositions because lead

3

counsel for Apria was unavailable for an extended period for medical reasons. [Van Dame Dec. ¶ 12.]

15.     The parties discussed the matter and negotiated settlement terms throughout 2024. Each side was represented by counsel during negotiations. [Van Dame Dec. ¶ 13.]

16.     On September 5, 2024, the Data Privacy Unit provided Apria with a settlement term sheet. [Van Dame Dec. ¶ 14.]

17.     On November 4, 2024, the Data Privacy Unit provided Apria with a proposed consent judgment. [Van Dame Dec. ¶ 15.]

18.     On January 15, 2025, the Data Privacy Unit filed a Motion for Partial Summary Judgment on Count I of the State's Amended Complaint (Violations of HIPAA's Breach Notification Rule). [Van Dame Dec. ¶ 16.]

19.     On January 24, 2025, the parties attended a settlement conference with Magistrate Judge Kellie M. Barr and reached an agreement on the settlement terms. [Van Dame Dec. ¶ 17.]

20.     The Data Privacy Unit retained and began consulting with experts before the court-ordered settlement conference. [Van Dame Dec. ¶ 18.]

21.     Finally, on or around February 24, 2025, the parties executed the proposed Consent Judgment. The Consent Judgment includes injunctive terms requiring Apria to comply with relevant laws including HIPAA, to implement and maintain an Information Security Program with specific technical safeguards and controls, and to undergo third-party compliance assessments. [*See* Consent

4

Judgment at 8-22.]  The Consent Judgment also requires a $1,000,000 payment to the State. [Consent Judgment ¶ 75.]

22.    Contemporaneously with this State's Brief in Support of Proposed Consent Judgment, the parties filed a Joint Motion to Enter Consent Judgment, which attaches the Consent Judgment signed by both parties.

## SUMMARY OF INJUNCTIVE TERMS

The Consent Judgment includes the following injunctive terms:

- Compliance with HIPAA, DSBA, and DCSA, including all applicable security, privacy, and breach notification requirements;

- Implementation and maintenance of an Information Security Program, including specific governance requirements, an incident response plan, table-top exercises, and employee training;

- Specific technical safeguards and controls including network segmentation, penetration testing, access controls, password management, logging and monitoring, change control, asset inventory, intrusion detection and prevention, vulnerability and threat management, and security updates and patch management;

- Personal and protected health information safeguards including data classification and inventory, encryption in transit and at rest, compliance with retention schedules, data minimization including compliance with the Minimum Necessary Standard, and dark web monitoring;

- Annual assessments of the potential risks and vulnerabilities to the confidentiality, integrity, and availability of protected health information held by Apria and implementation of risk management plans in accordance with 45 C.F.R. § 164.308(a)(1)(ii)(A)-(B);

- For a period of seven (7) years, biennial third-party assessments of Apria's information security practices and compliance with the Consent Judgment's requirements.

## ARGUMENT

For the reasons explained below, the Court should enter the Consent Judgment because it is "lawful, fair, reasonable, and adequate." *See E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).

### A.    Standard of Review.

A consent judgment is "a court order that embodies the terms agreed upon by the parties as a compromise to litigation." *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002). Considering "the general policy favoring voluntary settlements," the Court "must determine whether a proposed decree is lawful, fair, reasonable, and adequate." *Hiram Walker*, 768 F.2d at 88-889. "The district court may not deny approval of a consent decree unless it is unfair, unreasonable, or inadequate." *Id.* at 889. Further, "[t]he district court should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *Id.* "The essence of settlement is compromise[,]" and "a district court should be chary of disapproving a consent decree[.]" *Id.* at 889-90.

6

**B.    The Consent Judgment is Lawful.**

With respect to lawfulness, "[t]he consent decree proposed by the parties must (1) spring from and serve to resolve a dispute within the court's subject matter jurisdiction; (2) come within the general scope of the case made by the pleadings; and (3) further the objectives of the law upon which the complaint was based." *Komyatti v. Bayh*, 96 F.3d 955, 960 (quoting *Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986)) (quotations and alterations omitted).

Here, the State's Complaint alleges the following causes of action stemming from the Data Privacy Unit's investigation of the Apria Data Breach:

- Count One – Violations of HIPAA's Breach Notification Rule;

- Count Two – Violations of HIPAA's Security Rule;

- Count Three – Violations of HIPAA's Privacy Rule;

- Count Four – Violations of the Disclosure of Security Breach Act;

- Count Five – Violations of Indiana Deceptive Consumer Sales Act.

Apria is a covered entity subject to the requirements of HIPAA, a federal law. 42 U.S.C. § 1320d-5(d)(1) authorizes State Attorneys General to enforce HIPAA and requires that such actions be filed "in a district court of the United States of appropriate jurisdiction[.]"[1] Similarly, the Indiana Attorney General is authorized to

---

[1] As to personal jurisdiction, Defendant's principal office is in Indiana, and it offers medical equipment and services to Indiana consumers. [Consent Judgment at ¶¶ 2, 9.]

enforce DSBA pursuant to Ind. Code § 24-4.9-4-2, and DCSA pursuant to Ind. Code § 24-5-0.5-4(c).

All three statutes (HIPAA, DSBA, and DCSA) authorize the Attorney General to obtain injunctive relief, civil penalties, and costs and fees for the investigation and prosecution of the action. [*See* Dkt. 39 at 48-50 ("Relief Requested" identifying the subsections in each statute that authorize each remedy)]. The Consent Judgment is within the scope of the pleadings as it resolves all counts against Apria and furthers the case and objectives of the law.

Finally, because the State's claims stem from its investigation of the Apria Data Breach and Apria's data security and privacy practices, the State's DSBA and DCSA claims "form part of the same case or controversy" as the State's HIPAA claims, which allows the Court to exercise supplemental jurisdiction over the State's DSBA and DCSA claims under 28 U.S.C. § 1367.

On the whole, the Consent Judgment includes injunctive requirements related to data security and privacy and a payment to the State, remedies authorized by HIPAA, DSBA, and DCSA.[2]  For the reasons stated, the Consent Judgment comes within the general scope of the case made by the State's Complaint, serves to resolve a dispute within the Court's subject matter jurisdiction, and furthers the objectives of the law upon which the complaint was based. *See Komyatti*, 96 F.3d at 960 (quoting *Loc. No. 93*). The Consent Judgment is lawful and should be entered by the Court.

---

[2] Additional analysis regarding the amount of the payment is included in the next section.

C.      **The Consent Judgment is Fair, Reasonable, and Adequate.**

"Among the factors that a district court should consider when it makes th[e] 'fairness' determination are: a comparison of the strengths of plaintiffs' case versus the amount of the settlement offer; the likely complexity, length, and expense of the litigation; the amount of opposition to the settlement among affected parties; the opinion of competent counsel; and, the stage of the proceedings and the amount of discovery already undertaken at the time of the settlement." *Hiram Walker & Sons*, 768 F.2d at 889.  Allocation of the settlement benefits may also be considered. *See id.* at 890.

Unlike *Hiram Walker & Sons*, in which members of a class of employees objected to a consent decree, this enforcement action does not involve a class of individuals represented by the Data Privacy Unit.  There is no opposition to the settlement because it was the result of arms-length negotiations between Apria and the Data Privacy Unit at a court-ordered settlement conference.  Both sides were represented by counsel with experience in data privacy matters, and the settlement was reached after extensive discovery that included written responses and production of over 92,000 documents from Apria and third parties. [Van Dame Dec. ¶¶ 8, 10-12.] The complexity and expense of litigation in this case is likely to be high due to the technical nature of the evidence and the data security practices at issue. Litigation would involve additional expert consultation and require additional expense that is avoided through settlement.

With respect to the settlement terms themselves, the Information Security Program requirements and specific technical safeguards and controls align with the requirements of HIPAA's Security Rule (45 C.F.R. Part 164, Subpart D) and federal guidance regarding best practices for covered entities. *See, e.g.*, HIPAA Security Series, Security Standards: Technical Safeguards, *available at* https://www.hhs.gov/sites/default/files/ocr/privacy/hipaa/administrative/securityrule/techsafeguards.pdf?language=es (discussing technical safeguards including access control, audit controls, authentication, encryption); HIPAA Security Series, Basics of Risk Analysis and Risk Management, *available at* https://www.hhs.gov/sites/default/files/ocr/privacy/hipaa/administrative/securityrule/riskassessment.pdf?language=es.

Likewise, the total settlement payment – $1,000,000 – is less than the total civil penalties, costs, and fees that the relevant statutes authorize the State to recover. For continuing HIPAA violations, 42 U.S.C. § 1320d-5(d)(2) and 45 C.F.R. § 160.406 authorize statutory damages of $100 per HIPAA violation, per day, totaling up to $25,000 per year for violations of an identical requirement or prohibition. The Complaint alleges Apria has continuously violated the HIPAA Breach Notification Rule. The Complaint further alleges 11 separate, continuing violations of the HIPAA Security Rule, as well as separate violations of the HIPAA Privacy Rule for failing to implement appropriate administrative, technical, and physical safeguards to prevent the unauthorized disclosure of protected health information.

That said, the authorized penalties for the alleged violations of the HIPAA Breach Notification Rule, Security Rule, and Privacy Rule would exceed the $1,000,000 payment that the parties agreed to in the Consent Judgment, without even considering the penalties authorized by the DSBA and DCSA. The relevant statutes also authorize recovery of attorney's fees and expenses.  The $1,000,000 payment to the State is well within the amount authorized by HIPAA, DSBA, and DCSA, and from the State's perspective, represents an amount that balances protection of the State's residents – through the deterrent effect of civil penalties – with support for the work of healthcare providers who provide necessary medical products and services to those same residents. The agreed settlement payment properly accounts for the scope of the breach impacting at least 42,021 Indiana residents, the sensitivity of the compromised information, and the severity of the alleged violations.

Finally, with respect to the allocation of the settlement payment, Ind. Code § 4-6-3-2.4(a) provides, with limited exceptions, that "the attorney general may not agree to a settlement agreement on behalf of the state of Indiana or a state agency unless the settlement agreement includes language specifying that all settlement funds may be used for any purpose allowable under Indiana law."  Accordingly, the allocation of the payment "to be used for any purpose allowable under Indiana law" in Paragraph 75 of the Consent Judgment simply follows state law.

## CONCLUSION

For the reasons stated herein, the Consent Judgment is lawful, fair, reasonable, and adequate and should be entered by Court.

Respectfully submitted,

Date: 02/25/2025

*/s/ Jennifer M. Van Dame*

_____

Jennifer M. Van Dame
Indiana Attorney No. 32788-53
Deputy Attorney General
Office of the Indiana Attorney General
302 West Washington Street
Indianapolis, IN 46037
Phone: 317-232-0486
Fax: 317-232-7979
Email: jennifer.vandame@atg.in.gov